J-S31012-24 & J-S31013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1010 EDA 2024 |

Appeal from the Decree Entered March 5, 2024
In the Court of Common Pleas of Wayne County Orphans' Court Division
at No(s):  28-AD-2023

| | | |
|---|---|---|
| IN RE: K.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.D.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1031 EDA 2024 |

Appeal from the Decree Entered March 21, 2024
In the Court of Common Pleas of Wayne County Orphans' Court Division
at No(s):  28-AD-2023

BEFORE:  BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 8, 2024**

L.M.W. ("Mother") and L.D.S. ("Father") (collectively "Parents") appeal

from the respective decrees entered on March 5 and March 21, 2024, which

involuntarily terminated their parental rights to their daughter, K.M.S., born in June 2018.[1]  We affirm.

We glean the relevant factual and procedural history of these consolidated cases from the certified record.  Prior to the involvement of Wayne County Children and Youth Services ("CYS"), Parents resided in Lackawanna County where they both had a history of substance abuse involving methamphetamines.  **See** N.T., 10/17/23, at 6.[2]

Mother relocated to Wayne County in February 2022 after she obtained sole legal and physical custody of K.M.S.,[3] at which point Lackawanna County authorities requested that CYS conduct an intake to ensure Mother's sobriety and K.M.S.'s ongoing safety.  **Id**.; **see also** N.T., 12/19/23, at 10.  At first, Mother was cooperative with the intervention and participated in the initial assessments.  On April 8, 2022, however, she tested positive for methamphetamines during a drug screen, which was subsequently verified by

_____

[1] We consolidated these cases *sua sponte* pursuant to Pa.R.A.P. 513 because Mother and Father raised similar claims concerning the same factual and procedural events.  ("Where . . . the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").  Mother and Father also appealed the goal change order.  We declined to consolidate the instant appeals with the pending dependency matter so as to abide by the directive "to ensure that Fast Track Cases do not linger[.]"  **In re T.S.M.**, 71 A.3d 251, 261 n.21 (Pa. 2013) (cleaned up).

[2] This transcript appears in the certified record as CYS Exhibit 4.

[3] Although this order is not in the certified record, we discern that Mother was awarded sole custody of K.M.S. due to Father's substance abuse.

- 2 -

laboratory testing. *See* N.T., 3/19/24, at 6. Upon confirmation, Mother met with CYS but refused to participate in further drug screens or discuss the implementation of an in-home service plan. *Id*. Consequently, CYS obtained emergency custody of K.M.S. the same day. *See* N.T., 10/17/23, at 8.

On April 27, 2022, the trial court adjudicated K.M.S. dependent. *Id*. at 7. Her primary placement goal was initially established as reunification with a concurrent goal of adoption. In furtherance of reunification, Mother was ordered to address, among other things, her mental health and substance abuse issues. *See* N.T., 12/19/23, at 13. Along similar lines, Father was directed to, *inter alia*, "address his drug addiction and anger management issues." N.T., 3/19/24, at 8. The court conducted regular permanency review hearings between September 2022 and October 2023, during which each parent's compliance and progress with respect to these objectives was largely rated as minimal or non-existent. *See generally* CYS Exhibit 3.

Throughout this period, the particular locations of Mother and Father at any point in time was unclear, as they both lived transient existences that included frequent changes of residence, periods of homelessness, and incarceration for drug-related offenses. *See* N.T., 12/19/23, at 15-16; N.T., 3/19/24, at 7-8, 19. Following K.M.S.'s removal from Mother's care, CYS's efforts at securing a kinship placement were unsuccessful.[4] Thus, K.M.S. was

_____

[4] Mother has also raised a separate claim concerning the orphans' court's denial of a request to intervene that was submitted by K.M.S.'s maternal aunt
*(Footnote Continued Next Page)*

placed in pre-adoptive foster care with K.P. and M.P. (collectively "Foster Parents") where she has remained. *See* N.T., 3/19/24, at 9-10. Indeed, Foster Parents have filed notice of their intent to adopt K.M.S.

On May 31, 2023, the trial court filed an order finding that aggravated circumstances existed as to Mother, due to her failure to "maintain substantial and continuing contact" with K.M.S. during the preceding six months. *See* CYS Exhibit 3 at 13 (pagination supplied). The court directed that reunification efforts continue, but ultimately changed K.M.S.'s permanency goal to adoption. Mother and Father appealed, and this Court affirmed the goal change order.[5] *See Interest of K.S.*, 2024 WL 4142590 (Pa.Super. Sept. 11, 2024) (non-precedential decision).

On October 31, 2023, CYS filed a petition seeking to involuntarily terminate the parental rights of Mother and Father as to K.M.S. pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). The orphans' court held an initial

_____

("Maternal Aunt") in December 2023. *See* Mother's brief at 31-34. The orphans' court denied Maternal Aunt's request on February 2, 2024. Although Mother purports to challenge this holding in the instant appeal, our precedent provides that an "order denying intervention is one type of order which **must** be appealed within thirty days of its entry under [Pa.R.A.P.] 903, or not at all[.]" *In re Barnes Foundation*, 871 A.2d 792, 794 (Pa. 2005) (emphasis added); *see also*, *e.g.*, *J.C.D. v. A.L.R.*, 303 A.3d 425, 432 n.5 (Pa. 2023) (same in the context of child custody). Since Mother failed to timely appeal the denial of Maternal Aunt's intervention, any potential claim is waived.

[5] Mother attempts to relitigate a portion of that appeal by "reinstat[ing] the argument raised" therein as to the trial court's failure to consider a negative drug test. *See* Mother's brief at 30. This argument is not properly before us, and we will not consider it further.

termination hearing on December 19, 2023, at which point in time K.M.S. was approximately five years old and had been in placement for twenty months.[6] Therein, CYS adduced testimony from CYS assistant director Stephanie Bryant, and introduced the records from K.M.S.'s dependency proceedings. Mother did not testify but appeared by telephone from the Lackawanna County Jail. Father did not appear or testify.

_____

[6] Our Supreme Court has mandated that this Court conduct *sua sponte* review to ensure that orphans' courts appoint counsel for children in contested termination proceedings in conformity with 23 Pa.C.S. § 2313(a). ***See In re Adoption of K.M.G.***, 240 A.3d 1218, 1234-36 (Pa. 2020). This statute requires that the orphans' court "appoint an attorney to represent the child's legal interests, *i.e.* the child's preferred outcome." ***Id***. at 1235. The role of legal interest counsel is distinct from that of a guardian *ad litem* ("GAL"), who advocates for the child's best interests. ***Id***. at 1224. In the instant case, the orphans' court appointed Lindsey Collins, Esquire, to serve as "[c]ounsel" for K.M.S., in apparent conformity with § 2313(a). Notice, 11/1/23, at ¶ 2. Attorney Collins served as K.M.S.'s GAL during the parallel dependency proceedings, and both the orphans' court and the certified transcripts continued to refer to Attorney Collins only as K.M.S.'s GAL in the termination proceedings. ***See*** N.T., 12/19/23, at 1, 25-26; N.T., 3/19/24, at 1.

Based on the record, we discern that the orphans' court intended to appoint Attorney Collins to represent both K.M.S.'s legal and best interests in this matter. When doing so, the court must make an on-the-record determination that there is no conflict in the child's interests precluding simultaneous representation. ***K.M.G.***, 240 A.3d at 1235-36. Since the orphans' court initially failed to render this finding, we remanded to the orphans' court and directed it to "file a supplemental statement as to whether a conflict exists between K.M.S.'s legal interests and best interests pursuant to ***K.M.G.*** and its progeny." Order, 10/3/24, at ¶ 2. The orphans' court complied, submitting a supplemental statement averring that "no conflict exists" that would preclude Attorney Collins from representing K.M.S.'s best and legal interests. ***See*** Supplemental Statement, 10/21/24, at 1 (unpaginated). Thus, there is no structural error in the instant case. Nonetheless, we note with disapproval that Attorney Collins offered no opinion or argument concerning termination in the orphans' court and has not filed a brief on K.M.S.'s behalf in this appeal.

Thereafter, Father executed a consent to relinquish his parental rights to K.M.S., and CYS filed a petition to confirm his consent. *See* Petition to Confirm Consent, 2/4/24, at Exhibit A. On March 5, 2024, the orphans' court filed a decree that involuntarily terminated Mother's parental rights and confirmed Father's voluntary relinquishment. Later that same day, however, the orphans' court received a *pro se* letter from Father dated February 29, 2024, in which he revoked his consent to voluntary relinquishment.

Accordingly, the orphans' court rescinded the portion of its decree that had terminated Father's parental rights based upon voluntary relinquishment. On March 19, 2024, the orphans' court held a hearing with respect to CYS's request to involuntarily terminate Father's parental rights. CYS presented testimony from Ms. Bryant. Father appeared and testified virtually from the Lackawanna County Jail, where he was incarcerated at the time of these proceedings. On March 21, 2024, the orphans' court filed a decree that involuntarily terminated Father's parental rights.

On April 4, 2024, Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On April 9, 2024, Father also timely filed both a notice of appeal and a concise statement. On April 18, 2024, the orphans' court submitted a responsive Rule 1925(a)(2)(ii) opinion addressing both appeals.

In pertinent part, Mother and Father challenge the orphans' court's findings pursuant to § 2511(a) and (b). *See* Mother's brief at 6; Father's brief at 8. Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by § 2511, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S. § 2511(a). If the orphans' court determines that the petitioner has established grounds for termination under one of these

subsections by "clear and convincing evidence," the court then assesses the petition pursuant to § 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

This Court need only agree with the orphans' court's determination as to any one subsection of § 2511(a), in addition to its finding as to § 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). For the following reasons, we conclude that the orphans' court correctly held that CYS met its burden of proof under § 2511(a)(2) and (b), which provides as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

In order to satisfy § 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa.Super. 2021). Grounds for termination pursuant to § 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*. (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010)). Our Supreme Court has explained that while a parent's incarceration is not automatically dispositive under § 2511(a)(2), it is a relevant and potentially determinative factor:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control or subsistence and the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to § 2511(a)(2).

*In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (cleaned up). Overall, "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

- 9 -

In keeping with the above, we begin our analysis by reviewing the orphans' court's findings pursuant to § 2511(a)(2). In its Rule 1925(a) opinion, the orphans' court found that Parents suffered from a number of parenting incapacities, including substance abuse, frequent incarceration, and lack of stable living conditions. *See* Orphans' Court Opinion, 4/18/24, at 3-5. Furthermore, the court determined that Parents' incapacities had caused K.M.S. to be without essential parental care. *Id*. at 4 (indicating that Parents were unable to provide for K.M.S.'s "basic needs"). Finally, it concluded that the cause of Parents' incapacities would not, or could not, be remedied due to their failures to demonstrate any willingness to address their substance abuse problems. *Id*. at 4-5.

In their briefs, Parents have not materially challenged the orphans' court's conclusions with respect to the first two prongs of § 2511(a)(2), *i.e.*, that they suffer from incapacities in the form of substance abuse and instability that caused K.M.S. to be without essential parental care and control. *See* Mother's brief at 21-31; Father's brief at 15-20. Our review of the certified record confirms that these factors are satisfied as to Mother and Father in this case. Specifically, Ms. Bryant testified extensively concerning Parents' incapacities, in the form of substance abuse, homelessness, and incarceration. *See* N.T., 12/19/23, at 10-11, 14-15; N.T., 3/19/24, at 7-9. Additionally, the records from K.M.S.'s dependency proceedings also confirm that Parents have struggled with these issues throughout CYS's involvement

with the family. **See generally** CYS Exhibit 3. Notably, the trial court found aggravated circumstances with respect to Mother due to her failure to maintain contact with K.M.S. **See** CYS Exhibit 3 at 13 (unpaginated).

Parents instead focus solely on their alleged abilities to remedy those incapacities. **See** Mother's brief at 29 (arguing that Mother made "substantial progress" in alleviating her incapacities); Father's brief at 18 ("The evidence suggested [F]ather's willingness to remedy the situation."). Contrary to their arguments, however, our review indicates that neither Mother nor Father has demonstrated either a willingness, or an ability, to remedy their respective incapacities.

Ms. Bryant testified that between February and December of 2022, Mother was essentially "on the run" and out of contact with CYS. **See** N.T., 12/19/23, at 15. From December 2022 through October 2023, Mother continued to live a transient existence while being unsuccessfully discharged from both a rehabilitation program and a halfway house. **Id**. During this same period, Mother was also incarcerated on at least two separate occasions. **Id**. at 15-16. Although Ms. Bryant averred that Mother had re-enrolled in "drug and alcohol treatment" at the time of the termination hearing, she also explained that Mother still requires "continuous treatment" and that there is no "end date" in the immediate future. **Id**. at 13. Finally, Ms. Bryant also testified that Mother submitted to ten drug screens between April 12, 2023,

and December 19, 2023, and tested positive for having used methamphetamines on "five or six" occasions. *Id*. at 19.

With respect to Father, Ms. Bryant testified that he generally manifested a significant "lack of cooperation" with CYS throughout these proceedings. *See* N.T., 3/19/24, at 7. Indeed, Father's own testimony indicated that his abuse of methamphetamines resulted in him being charged with multiple counts of possession with intent to distribute in Lackawanna and Luzerne Counties around December 2023. *Id*. at 19-20. Although Father explained that he was slated to be released from prison near the end of March 2024, he also testified that he was scheduled to immediately enter an intensive rehabilitation program in Scranton, Pennsylvania, which would last between six to eighteen months. *Id*. at 19-20, 25. Additionally, Ms. Bryant testified that, although Father claimed to have begun drug and alcohol treatment at the time of his hearing, CYS was unable to verify these claims with Father's alleged service provider. *Id*. at 10.

Viewed together, this testimony indicates that Mother and Father were still struggling with addiction and thereby failing to cure their parental incapacities. While Mother managed to enter treatment again recently, she continued to regularly test positive for illicit substances. At the time of the termination hearings, Father remained incarcerated on narcotics-related charges and was awaiting his opportunity to enter an intensive rehabilitation program that might last as long as one and one-half years. This evidence

supports the orphans' court's finding that Parents' parental incapacities cannot or will not be remedied.

Based upon the foregoing, we observe no abuse of discretion or error of law in the orphans' court's conclusion that termination was warranted pursuant to § 2511(a)(2). No relief is due with respect to Parents' claims.

We now turn to § 2511(b), which involves assessing the developmental, physical and emotional needs and welfare of K.M.S. **See** 23 Pa.C.S. § 2511(b); **T.S.M.**, 71 A.3d at 267. This determination "must be made on a case-by-case basis," with an eye towards "each child's specific needs." **Interest of K.T.**, 296 A.3d 1085, 1105-06 (Pa. 2023). We note that a child's "emotional needs and welfare include intangibles, such as love, comfort, security, and stability." **Id**. at 1106.

Overall, this inquiry is neither formulaic, nor mechanical. **Id**. Further, it must include consideration of the bond between the parent and the child. **See In re E.M.**, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has explained that "only a necessary and beneficial" parental bond should be maintained. **K.T.**, 296 A.3d at 1009. A bond is considered to be "necessary and beneficial" if its severance would cause extreme emotional consequences or significant, irreparable harm. **Id**. at 1109-10. The extent, however, of the "bond-effect analysis necessarily depends on the circumstances of the particular case." **In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). It is "within the discretion of the orphans' court to

prioritize the safety and security" of children "over their bonds with their parents." ***M.E.***, 283 A.3d at 839 (cleaned up). Finally, courts should also consider "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***K.T.***, 296 A.3d at 1106.

In its opinion, the orphans' court found that termination would "best serve" K.M.S.'s "developmental, physical, and emotional needs and welfare." Orphans' Court Opinion, 4/18/24, at 5. The court also determined that "K.M.S. has been safe and provided for while in the care of" Foster Parents, and that she deserves the permanency and stability offered by the prospect of adoption. ***Id***.

With respect to the bonding assessment mandated by our Supreme Court, Ms. Bryant testified that K.M.S. does share a bond with Mother and Father. ***See*** N.T., 3/19/24, at 9; N.T., 12/19/23, at 17. However, she also averred that K.M.S. is similarly bonded to Foster Parents, who have been caring for her throughout the last two years, *i.e.*, nearly one-half of K.M.S.'s natural life. ***See*** N.T., 3/19/24, at 9. Tellingly, Ms. Bryant testified that K.M.S. has not displayed any negative behaviors or emotions after visitations with Parents were permanently concluded through a series of "goodbye" visits that took place between November and December of 2023, as ordered by the dependency court. ***Id***. at 9, 12; ***see also*** N.T., 12/19/23, at 17. She opined that severing Parents' respective relationships with K.M.S. would best serve her interests and welfare. ***See*** N.T., 3/19/24, at 9; N.T., 12/19/23, at 17-18.

Our review reveals nothing in the certified record that would demonstrate that K.M.S. has a necessary and beneficial bond with Mother or Father. Based upon the foregoing, we observe no abuse of discretion or error of law in the orphans' court's holding that termination of the parental rights of Mother and Father as to K.M.S. was also warranted pursuant to § 2511(b). Thus, we affirm the underlying decrees.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/8/2024